IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| ANTHONY HICKEY, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | NO. 3:21-cv-00034 |
| v. | ) | |
| | ) | Judge Eli J. Richardson |
| CORECIVIC OF TENNESSEE, LLC, as | ) | Magistrate Judge Alistair E. Newbern |
| owner and operator of TROUSDALE | ) | |
| TURNER CORRECTIONAL CENTER and | ) | |
| LIEUTENANT CRAIG MURRAY, | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

## FIRST AMENDED COMPLAINT

## I.    <u>INTRODUCTION</u>

1.    On January 29, 2021, Plaintiff Anthony Hickey was brutally attacked by several inmates while in his cell at Trousdale Turner Correctional Center ("Trousdale Turner")—a private, for-profit prison operated by Defendant CoreCivic of Tennessee, LLC ("CoreCivic"). The attack left Mr. Hickey, who was then 51 years old, with a crushed left hip and femur. Mr. Hickey requested emergency medical care, but the CoreCivic correctional officers on duty refused his request. He remained in his cell—in severe pain, unable to walk, and forced to crawl across the cell floor to use the toilet—for the next three days, until CoreCivic officials finally allowed him to visit the medical unit for treatment of his injuries. Mr. Hickey subsequently received a partial hip replacement and still suffers significant pain.

2.    Like thousands of previous attacks that had occurred at CoreCivic's Tennessee facilities, the attack on Mr. Hickey was foreseeable and preventable. Until two days prior to the attack, Mr. Hickey had been segregated from the general prison population because inmates

affiliated with the Crips street gang had threatened his life. Despite prison staff's knowledge of these threats, on January 27, 2021, a CoreCivic correctional officer ordered Mr. Hickey to leave segregation and return to a cell in the same compound with the inmates who had threatened him. When Mr. Hickey protested returning to a compound where his life was in danger, the CoreCivic corrections officer charged him with Refusing Cell Assignment (RCA). Because another RCA would put at risk Mr. Hickey's chance for parole, he returned to the compound where he was attacked two days later.

3.      The January 2021 attack on Mr. Hickey is but the most egregious example of the cruel and unusual conditions of Mr. Hickey's confinement at Trousdale Turner. Six months earlier, on July 17, 2020, Mr. Hickey accidentally rolled off the top bunk in his cell and landed on his left jaw, causing a filling to come out of a back molar. Over the coming days, Mr. Hickey's left jaw began to swell and ache. He submitted a request to see a dentist, and then another, and then four more, until he was finally allowed to see a dentist on October 8, 2020, nearly three months after his accident. By that time, Mr. Hickey was in such severe pain that he could barely open his mouth. He was subsequently taken to the emergency room at Nashville General Hospital, where he was diagnosed with a severely abscessed tooth requiring immediate dental surgery.

4.      Another example of the cruel and unusual treatment of Mr. Hickey while at Trousdale Turner occurred on February 6, 2021, just four days after his hip replacement surgery. Mr. Hickey injured his arm when he slipped and fell in the medical cell to which he had been assigned during his recovery from surgery. When he requested medical attention for his injury, CoreCivic corrections officer Lt. Craig Murray entered his cell and held up a pepper spray canister to Mr. Hickey's face, demanding that Mr. Hickey "talk with respect." Mr. Hickey, who

was seated, then lifted his arm to show Lt. Murray his injury. Lt. Murray grabbed his arm and violently jerked it up and forward and then slammed it down against Mr. Hickey's legs, causing a shock of intense pain in Mr. Hickey's recently-replaced hip. When Mr. Hickey winced from the pain, Lt. Murray pointed the spray canister directly in his face and told him to "shut up." Mr. Hickey understandably complied and Lt. Murray left the cell.

5.     CoreCivic—which changed its name from Corrections Corporation of America in 2016 after that name became synonymous with the most egregious aspects of America's private prison industry—is one of the nation's most notorious private prison operators.

6.     To maintain its profit margin, CoreCivic serially underinvests in prison staff, security, and inmate healthcare in its prisons, leading to predictable and horrific results. CoreCivic accordingly boasts years of consistently failed audits and extensive reports of deficiencies and fatal misconduct at its Tennessee facilities in general and at Trousdale Turner Correctional Center in particular.[1]

---

[1] *See*, *e.g.*, Adam Tamburin, *Tennessee prison inmate dies after fight at Trousdale Turner*, The Tennessean (Jan. 26, 2020), https://www.tennessean.com/story/news/2020/01/26/tennessee-prison-inmate-dies-after-fighttrousdale-turner-correctional-center/4581013002/; Chris Conte, *Prisons for profit: Concerns mount about Trousdale Turner Correctional Center, operator CoreCivic*, WTVF (Jun. 13, 2019), https://www.newschannel5.com/longform/prisons-for-profit-concerns-mount-about-trousdale-turnercorrectional-center-operator-corecivic; Staff Report, *Scathing state audit slams Tennessee prisons, CoreCivic for staffing, sexual assaults, and deaths in jails*, WTVF (Jan. 10, 2020), https://www.newschannel5.com/news/scathing-state-audit-slams-tennessee-prisons-corecivic-forstaffing-sexual-assaults-and-deaths-in-jails; Chris Gregory, *Family seeks answers in loved one's death at Trousdale prison*, Lebanon Democrat (Jan. 2, 2021), https://www.lebanondemocrat.com/hartsville/family-seeks-answersin-loved-ones-death-at-trousdale-prison/article_1ffe90f7-0e9f-5021-bb94-9ec1b4d23139.html; Demetria Kalodimos, *Inmates at CoreCivic prisons say they sometimes go months without medical care*, WSMV (Jun. 22, 2017), https://www.wsmv.com/news/inmates-at-corecivic-prisons-say-they-sometimes-gomonths-without-medical-care/article_8d28e630-bd12-5f1c-8b68-92b9336553e1.html; Ethan Illers, *Man killed during inmate-on-inmate altercation at Trousdale Turner prison*, WSMV (Jun. 16, 2019), https://www.wsmv.com/news/mankilled-during-inmate-on-inmate-altercation-at-trousdale-turner-prison/article_8d8b6806-9066-11e9-b749-7b44cac1c002.html.

7.     For example, a 2017 performance audit conducted by the Tennessee Comptroller found, among numerous deficiencies, that Trousdale Turner, in particular, "operated with fewer than approved correctional staff, did not have all staffing rosters, did not follow staffing pattern guidelines, and left critical posts understaffed;" that "CoreCivic staffing reports at Trousdale Turner Correctional Center . . . contained numerous errors;" and that "Trousdale Turner Correctional Center management's noncompliance with contractual requirements and department policies relating to inmate services challenged the department's ability to effectively monitor the correctional facility."[2] The Performance Audit Report noted that CoreCivic's failure to staff critical posts "jeopardizes the safety and health of inmates, staff, and the community."[3]

8.     A 2020 Performance Audit Report also found that over 20 percent of reported uses of physical force by correctional officers against all inmates in Tennessee in 2018 occurred at Trousdale Turner. CoreCivic, however, "did not implement or enforce established internal controls" to ensure that staff "collected and accurately reported" correctional officers' use of force.[4]

9.     CoreCivic's policy, practice, or custom of understaffing of its Tennessee facilities and inadequately training and supervising its correctional officers regarding inmate safety and the use of force has led to predictable results: Tennessee inmates housed at CoreCivic facilities are approximately twice as likely to die and more than four times as likely to be murdered as

---

[2] Tennessee Comptroller of the Treasury, Performance Audit Report, Tennessee Department of Corrections, Jan. 2020, https://comptroller.tn.gov/content/dam/cot/sa/advanced-search/2020/pa19032.pdf (citing findings from a 2017 Performance Audit Report).
[3] *Id.*
[4] *Id.*

Tennessee inmates housed at state-managed facilities—even though CoreCivic houses inmates with disproportionately low security designations.[5]

10.     Mr. Hickey never stood a chance in such an environment, especially at Trousdale Turner—one of CoreCivic's most dangerous, grossly understaffed and under-resourced prison. Due to CoreCivic's calculated and profit-motivated understaffing of Trousdale Turner and the inadequate safety measures in place at the facility, Mr. Hickey was the victim of a foreseeable and preventable attack by other inmates, received constitutionally-inadequate medical attention, and was subjected to the excessive use of force.

## II.     PARTIES

11.     Plaintiff Anthony Hickey is a citizen of the state of Tennessee who at all times relevant to this Complaint resided at the Trousdale Turner Correctional Center in Hartsville, Tennessee.

12.     Defendant CoreCivic, LLC owns and operates for-profit private prisons and detention centers, including Trousdale Turner. CoreCivic is a Maryland corporation with its headquarters and principal place of business in Brentwood, Tennessee.

13.     Defendant Lieutenant Craig Murray is a CoreCivic employee who assaulted Mr. Hickey while he was recovering from hip replacement surgery in a medical cell.

---

[5] Cassandra Stephenson, *Inmate death ruled homicide in a Tennessee CoreCivic prison where rate is twice as high as TDOC's, records show*, Jackson Sun, Jan. 28, 2020, https://www.jacksonsun.com/story/news/crime/2020/01/28/corecivics-tennesseeprisons-have-twice-homicide-rate-tdocs/2776928001/ ("The corporation's four Tennessee facilities hold roughly 35% of the state's prison population, but accounted for about 63% of the state's prison homicides."); Prison Legal News, *CoreCivic Prisons in Tennessee Have Twice as Many Murders, Four times the Homicide Rate as State-Run Facilities*, PLN, Aug. 6, 2019, https://www.prisonlegalnews.org/news/2019/aug/6/corecivic-prisons-tennessee-have-twice-many-murders-four-times-homicide-rate-state-run-facilities/.

## III.    JURSIDCTION AND VENUE

14.    This Court has subject matter jurisdiction over the Plaintiff's federal claims under 28 U.S.C. § 1331.

15.    Under 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over the Plaintiff's state law claim as it arose from the same case or controversy as Plaintiff's federal claims.

16.    This Court has personal jurisdiction over all Defendants in this matter, as all Defendants are residents of the state of Tennessee.

17.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in this district.

18.    Venue is also proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1), as all Defendants reside in this judicial district, and all Defendants are residents of the state of Tennessee.

## IV.    FACTUAL ALLEGATIONS

### A.    CoreCivic's Deliberate Indifference to Mr. Hickey's Abscessed Tooth

19.    On July 17, 2020, Mr. Hickey accidentally rolled off the top bunk in his cell at Trousdale Turner and landed on his left jaw, causing a filling to come out of a back molar.

20.    Over the following days, Mr. Hickey's left jaw began to swell and ache. He submitted at least six "sick call" forms requesting medical attention for his jaw, but his requests were ignored by CoreCivic officials despite his obviously swollen jaw.

21.    Mr. Hickey was finally allowed to see a dentist at Trousdale Tuner on October 8, 2020, nearly three months after his accident. By that time, Mr. Hickey was in such severe pain that he could barely open his mouth.

22.     The dentist at Trousdale Turner prescribed an antibiotic for Mr. Hickey, but his condition still did not improve. On October 14, 2020, Mr. Hickey was taken to the emergency room at Nashville General Hospital, where he was diagnosed with a severely abscessed tooth requiring immediate dental surgery to remove the abscessed tooth and drain the infection from his gums and jaw.

23.     At the time Mr. Hickey was injured on July 17, 2020, and for the three following months when CoreCivic failed to provide him with medical care for his abscessed tooth, Trousdale Turner was not in compliance with minimum contractual staffing requirements.

**B.      CoreCivic's Failure to Protect Mr. Hickey from a Foreseeable and Preventable Attack by Other Inmates and Deliberate Indifference to His Injuries**

24.     On and before January 27, 2021, Mr. Hickey was housed in a cell segregated from the general prison population at Trousdale because inmates affiliated with the Crips street gang had threatened his life.

25.     Despite prison staff's knowledge of these threats, on January 27, 2021, a CoreCivic correctional officer ordered Mr. Hickey to leave segregation and return to a cell in the same compound as the inmates who had threatened him. When Mr. Hickey protested returning to a compound where his life was in danger, the CoreCivic corrections officer charged him with Refusing Cell Assignment (RCA). Because another RCA would put at risk Mr. Hickey's chance for parole, he returned to the compound to which CoreCivic had assigned him.

26.     On January 29, 2021, less than two days after returning to the compound, Mr. Hickey was brutally attacked by several inmates while in his cell. The attackers entered the cell, pulled Mr. Hickey from the top bunk onto the floor, covered him with a blanket, and proceeded to kick and stomp him for approximately two minutes. Mr. Hickey's cellmate returned

to the cell soon after the attack and found Mr. Hickey on the floor unable to walk and in severe pain.

27.     For the next three days, Mr. Hickey remained in his cell in severe pain, unable to walk, and forced to crawl across the cell floor to use the toilet. He repeatedly requested emergency medical care, but the CoreCivic correctional officers on duty refused his requests. They even denied him over-the-counter pain relievers such as ibuprofen or aspirin.

28.     Mr. Hickey was finally allowed to visit the Trousdale medical unit for treatment of his injuries on February 1, 2021. The medical staff then sent him to Nashville General Hospital for x-rays, which revealed severe fractures of his left hip and femur. He was transferred the same night to TriStar Skyline Medical Center in Nashville, where he received a partial hip replacement. Mr. Hickey continues to suffer physical pain and mental trauma from his attack and the resulting injuries.

29.     At the time Mr. Hickey attacked, and for the three following days when CoreCivic failed to provide him with medical care for his crushed hip, Trousdale Turner was not in compliance with minimum contractual staffing requirements.

C.      **Lt. Murray's Use of Excessive Force Against Mr. Hickey**

30.     On February 6, 2021, just four days after his hip replacement surgery, Mr. Hickey injured his arm when he slipped and fell in the medical cell to which he had been assigned during his recovery from surgery.

31.     When he requested medical attention for his injury, CoreCivic corrections officer Lt. Craig Murray entered his cell and held up a pepper spray canister to Mr. Hickey's face, demanding that Mr. Hickey "talk with respect."

32.     Mr. Hickey, who was seated, then lifted his arm to show Lt. Murray his injury. Lt. Murray grabbed his arm and violently jerked it up and forward and then slammed it down against

Mr. Hickey's legs, causing a shock of intense pain in Mr. Hickey's recently-replaced hip. When Mr. Hickey winced from the pain, Lt. Murray pointed the spray canister directly in his face and told him to "shut up." Mr. Hickey complied and Lt. Murray left the cell.

## V.  CAUSES OF ACTION

### COUNT I.
### 42 U.S.C. § 1983: Failure to Protect the Plaintiff from
### Inmate-on-Inmate Violence in Violation of the Eighth Amendment
### (Against Defendant CoreCivic)

33.     Plaintiff incorporates by reference all prior paragraphs as if set forth in full herein.

34.     The Eighth Amendment to the Constitution prohibits the imposition of "cruel and unusual punishments." The Constitutional prohibition of cruel and unusual punishments imposes several minimal requirements on prison officials, including requirements to: (1) provide humane conditions of confinement; (2) ensure that inmates receive adequate medical care; and (3) take reasonable measures to protect prisoners from violence at the hands of other prisoners.

35.     At all relevant times, CoreCivic had the constitutional duty under the Eighth Amendment to take reasonable measures to protect Mr. Hickey from violence at the hands of fellow inmates and to ensure Mr. Hickey's reasonable safety at its facility.

36.     CoreCivic has an unconstitutional policy, practice, or custom of maintaining staffing levels insufficient to ensure that inmates like Mr. Hickey are reasonably protected from inmate-on-inmate violence.

37.     By the acts and omissions complained of in paragraphs 24-29 above, CoreCivic acted with deliberate indifference to a substantial risk of serious harm to Mr. Hickey while he was incarcerated at Trousdale Turner.

38.     As a result of CoreCivic's deliberate indifference to Mr. Hickey's safety, Mr. Hickey was repeatedly attacked and injured by other inmates at Trousdale Turner.

39. Mr. Hickey informed CoreCivic staff that a group of inmates had threatened his safety. Thus, CoreCivic had actual knowledge of the specific and particularized risks of serious harm faced by Mr. Hickey while incarcerated at Trousdale Turner.

40. CoreCivic disregarded the known risks faced by Mr. Hickey and failed to take reasonable steps to keep Mr. Hickey safe from these risks of serious harm.

41. CoreCivic not only disregarded the known risk of serious harm faced by Mr. Hickey, but exacerbated this risk of harm by intentionally giving his attackers access to him. Despite knowing of these inmates' threats to kill Mr. Hickey, CoreCivic guards forced Mr. Hickey to return to a cell in the compound with the inmates who had threatened him and would ultimately attack him. Rather than maintaining inmate safety, CoreCivic encouraged inmate-on-inmate violence by assisting these inmates' ability to harm Mr. Hickey.

42. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which provides a cause of action to redress the deprivation of his constitutional rights by persons acting under color of state law.

43. When operating a state prison, a traditional state function, CoreCivic acts under the color of state law. Thus, CoreCivic is not entitled to immunity under the Eleventh Amendment and may be held liable under § 1983 where "its official policies or customs resulted in injury to the plaintiff."[6]

## COUNT II.
### 42 U.S.C. § 1983: Deliberate Indifference to the Plaintiff's Medical Needs in Violation of the Eighth Amendment (Against Defendant CoreCivic)

44. Plaintiff incorporates by reference all prior paragraphs as if set forth in full herein.

---

[6] *O'Brien v. Mich. Dep't of Corr.*, 592 Fed. App'x 338, 341 (6th Cir. 2014).

45.     The Eighth Amendment requires prison officials to ensure that inmates receive adequate medical care.

46.     At all relevant times, CoreCivic and its officials and agents had the constitutional duty under the Eighth Amendment to ensure that Mr. Hickey received adequate medical care.

47.     CoreCivic failed to meet the Eighth Amendment's minimal requirements that prison officials must provide adequate medical treatment by failing to provide the Mr. Hickey with adequate medical care in violation of his constitutional rights.

48.     CoreCivic maintains an unconstitutional policy or practice of staffing insufficient and unqualified medical staff. In pursuit of profit, CoreCivic discourages prisoners from reporting their medical needs and systemically ignores inmates' requests for medical treatment.

49.     At all relevant times, CoreCivic was deliberately indifferent to the Plaintiff's serious medical need.

50.     Mr. Hickey had serious medical needs twice (so far) while at Trousdale Turner: the abscessed tooth in 2020 and the fractured hip and femur in 2021. These medical needs were visible and obvious. Mr. Hickey's jaw was so swollen from his abscessed tooth that a lay person would easily recognize the need for urgent medical attention, and he was unable to walk from his crushed hip.

51.     CoreCivic knew that Mr. Hickey faced a substantial risk of serious harm if his medical need went untreated. Indeed, Mr. Hickey made repeated requests for medical treatment, which CoreCivic repeatedly denied. Eventually, his serious medical needs were confirmed, but not before Mr. Hickey had suffered severe and ongoing pain for days (in the case of his fractured hip) and months (in the case of his abscessed tooth).

52.     CoreCivic consciously disregarded the substantial risk of serious harm to Mr. Hickey by not taking reasonable steps to treat his medical needs. When Mr. Hickey first made requests to see doctors regarding his injuries, CoreCivic staff ignored his requests, even refusing to provide him with pain medication.

53.     CoreCivic was acting or purporting to act in the performance of its official duties through its medical staff and employees when it failed to meet Mr. Hickey's medical need. Contracting out its medical staff does not relieve CoreCivic of its constitutional duty to provide adequate medical treatment to those incarcerated at Trousdale Turner.

54.     Mr. Hickey was harmed by CoreCivic's failure to provide him with adequate medical treatment. During the three months between losing his filling and his emergency dental surgery, Mr. Hickey suffered severe swelling of his jaw and intense pain. During the three days after he was brutally attacked, CoreCivic officials left him in his cell in severe pain, unable to walk, and forced to crawl across the cell floor to use the toilet.

55.     CoreCivic's actions and omissions were a substantial factor in causing Mr. Hickey's harm. CoreCivic's unconstitutional policies or practices of enabling inmate-on-inmate violence and denying inmates' requests for medical treatment resulted in injury to Mr. Hickey.

56.     CoreCivic's unconstitutional policies or practices of staffing insufficient and unqualified medical staff, discouraging prisoners from reporting their medical needs, and systemically ignoring inmates' requests for medical treatment resulted in exacerbated harms to Mr. Hickey.

57.     CoreCivic's deliberate indifference to Mr. Hickey's serious medical needs directly and proximately resulted in excruciating pain, increased swelling, an exacerbated injury, and undue suffering.

58.     Plaintiff seeks relief for this claim pursuant to 42 U.S.C. § 1983, which provides a cause of action to redress the deprivation of his constitutional rights by persons acting under color of state law.

59.     When operating a state prison, a traditional state function, CoreCivic acts under the color of state law. CoreCivic is not entitled to immunity under the Eleventh Amendment and may be held liable under § 1983 where "its official policies or customs resulted in injury to the plaintiff."[7]

### COUNT III.
### 42 U.S.C. § 1983: Excessive Use of Force
### in Violation of the Eighth Amendment
### (Against Defendants CoreCivic and Murray)

60.     Plaintiff incorporates by reference all prior paragraphs as if set forth in full herein.

61.     The Eighth Amendment prohibits prison officials from using excessive physical force against inmates.

62.     At all relevant times, CoreCivic, Lt. Murray had the constitutional duty under the Eighth Amendment to refrain from using excessive physical force against Mr. Hickey.

63.     Lt. Murray unnecessarily and intentionally used excessive physical force against Mr. Hickey when Lt. Murray grabbed Mr. Hickey's arm and violently jerked it up and forward and then slammed it down against Mr. Hickey's legs, knowing that Mr. Hickey was recovering from hip replacement surgery just four days before.

64.     Lt. Murray was acting in the performance of his official duties when grabbed Mr. Hickey's arm and slammed it against his legs.

---

[7] *O'Brien v. Mich. Dep't of Corr.*, 592 Fed. App'x 338, 341 (6th Cir. 2014).

65.     CoreCivic has a policy, practice, or custom of failing to adequately train, supervise, and control corrections officers at Trousdale Turner and failing to adequately discipline officers involved in misconduct.

66.     As a direct and proximate cause of Lt. Murray actions and CoreCivic's policies, practices, or customs, Plaintiff was injured as described above.

67.     Mr. Hickey seeks relief for this claim pursuant to 42 U.S.C. § 1983, which provides a cause of action to redress the deprivation of his constitutional rights by persons acting under color of state law.

68.     When operating a state prison, a traditional state function, CoreCivic acts under the color of state law. CoreCivic is not entitled to immunity under the Eleventh Amendment and may be held liable under § 1983 where "its official policies or customs resulted in injury to the plaintiff."8

## COUNT IV.
### Negligence
### (Against Defendant CoreCivic)

69.     Plaintiff incorporates by reference all prior paragraphs as if set forth in full herein.

70.     CoreCivic owed Plaintiff a duty to provide a reasonably safe environment while an inmate at a CoreCivic facility.

71.     Defendant CoreCivic breached its duty of care towards Plaintiff including by:

        a.      Maintaining a policy, practice, or custom of insufficiently staffing CoreCivic facilities in such a manner that inmates like Mr. Hickey are not reasonably protected from inmate-on-inmate violence;

---

8 *O'Brien v. Mich. Dep't of Corr.*, 592 Fed. App'x 338, 341 (6th Cir. 2014).

b.    Acting with deliberate indifference to a substantial risk of serious harm to Mr. Hickey while he was incarcerated at Trousdale Turner after Mr. Hickey informed CoreCivic staff that he faced an imminent threat of harm by fellow inmates;

c.    Exacerbating the imminent risk of serious harm faced by Mr. Hickey by intentionally giving his attackers access to him; and

d.    Failing to maintain a reasonably safe environment, including an environment free from foreseeable violence by its employees.

72.    By failing to exercise ordinary care through their actions and omissions, CoreCivic directly and proximately caused foreseeable harm to Plaintiff Hickey constituting a crushed hip, excruciating pain, and undue suffering.

## COUNT V.
### Assault and Battery
### (Against Defendants CoreCivic and Murray)

73.    Plaintiff incorporates by reference all prior paragraphs as if set forth in full herein.

74.    Lt. Murray intentionally and recklessly caused harmful and offensive bodily contact to the Plaintiff, causing the Plaintiff to reasonably fear imminent bodily harm. Lt. Murray intentionally grabbed Mr. Hickey's arm and slammed it against his legs, knowing that Mr. Hickey was recovering from hip replacement surgery just four days before, causing Mr. Hickey intense pain.

75.    When Lt. Murray, a CoreCivic employee, assaulted Mr. Hickey, Lt. Murray was acting within the scope of his employment.

76.    CoreCivic is vicariously liable under the doctrine of respondeat superior for the negligent and/or intentional conduct committed by its employees during their correctional officers' management of inmates at Trousdale Turner.

77.     CoreCivic aided and abetted and/or ratified its correctional officer's abusive conduct towards Mr. Hickey by failing to discipline, take corrective action, and or/report the assaultive conduct. As detailed above, CoreCivic has a pattern and custom of failing to properly train, oversee, supervise, and discipline their staff, including their correctional officers, and systematically fails to maintain appropriate staffing levels at their facilities.

78.     The wrongful acts by Defendants Lt. Murray were also foreseeable, as CoreCivic was aware of repeated incidents of excessive force used against inmates at their facilities. CoreCivic knew, or reasonably should have known, that by failing to implement appropriate procedures, policies, and safeguards regarding their staffing, training, and oversight of their correctional officers, it was highly foreseeable that their staff would continue to assault, abuse, and use excessive force towards inmates in their facilities, including Mr. Hickey.

79.     As a direct and proximate result of CoreCivic's conduct and the conduct of its employee assaulting Plaintiff, Mr. Hickey has suffered severe physical pain and has suffered and will continue to suffer emotional distress, mental anguish, and great pain of mind and body.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests the following relief:

1.     That proper process issue and be served upon the Defendants, and that the Defendants be required to appear and answer this Complaint within the time required by law;

2.     That the Plaintiff be awarded all compensatory, consequential, incidental, and punitive damages to which he is entitled, in an amount not less than $2,000,000.00;

3.     That the Plaintiff be awarded all costs and discretionary costs of trying this action;

4.     That the Plaintiff be awarded his reasonable attorney's fees pursuant to 42 U.S.C. § 1988(b);

5.     That the Plaintiff be awarded pre-judgment and post-judgment interest; and,

6. That the Plaintiff be awarded all further relief to which he is entitled.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff respectfully requests a trial by jury as to all matters so triable.

Respectfully submitted,

/s/ Mark P. Chalos
Mark P. Chalos
*mchalos@lchb.com*
Kenneth S. Byrd
*kbyrd@lchb.com*
Andrew Kaufman
*akaufman@lchb.com*
Christopher E. Coleman
*ccoleman@lchb.com*
**LIEFF CABRASER HEIMANN &
BERNSTEIN LLP**
222 2nd Ave, Suite 1640
Nashville, TN 37201
Phone: (615) 313-9000
Facsimile: (615) 313-9965